**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

         - against -

ULRIK DEBO,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 20 Civ. 0006 (PKC)


**THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**APPLICATION TO INTERVENE AND FOR A COMPLETE STAY**


AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
     of America

Noah Solowiejczyk
Vladislav Vainberg
Assistant United States Attorneys

    *- Of Counsel -*

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the parallel criminal case, *United States v. Ulrik Debo*, 19 Cr. 874 (GBD) (the "Criminal Case").

The Criminal Case arises from the identical set of facts and circumstances that underlie this action. As a result, a full stay is especially appropriate because any exchange of discovery would be asymmetrical and would merely allow the defendant to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a complete stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection. *See, e.g.*, *SEC v. Wey*, 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Durante et al.*, 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at **2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29, 2016); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting U.S. Attorney's Office request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to

1

any criminal charge); *Harris v. Nassau County et al.*, 2014 U.S. Dist. LEXIS 94554 at *10 (E.D.N.Y. 2014); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this action until the completion of the Criminal Case. Defendant Debo consents to the Government's motion and the SEC take no position with respect to the Government's motion.

## FACTUAL BACKGROUND

This case and the parallel Criminal Case arise out of the same underlying facts. On January 2, 2020, criminal indictment 19 Cr. 874 (GBD) (the "Indictment") was unsealed, charging Debo and his co-defendants Kenneth Ciapala and Blacklight S.A. with conspiracy to commit securities fraud (Count One), conspiracy to commit wire fraud (Count Two), two counts of substantive securities fraud (Counts Four and Five), and one count of substantive wire fraud (Count Six).[1]

The charges in the Indictment relate to Debo's involvement in a stock manipulation scheme that spanned years and involved microcap stocks traded on the over-the-counter ("OTC") market.   In particular, the Indictment alleges that Debo, Ciapala and Blacklight, as well as others known and unknown, conspired to defraud the investing public by orchestrating and facilitating multiple stock manipulation schemes, commonly referred to as "pump and dump" schemes. (Indictment ¶ 11).   In order to perpetrate the stock manipulation schemes, Debo and his co-conspirators secretly amassed beneficial ownership of substantially all of the shares of certain publicly traded companies, and thereafter manipulated the price and demand for these

---

[1]  A copy of the Indictment is annexed hereto as Exhibit A.   Debo is not charged in Counts Three, Seven and Eight of the Indictment.

stocks through the release of materially false information to the investing public and through manipulative trading activity.   Debo and his co-conspirators thereafter sold out of their secretly-amassed positions in these stocks at inflated prices at the expense of the investing public. (*Id.* ¶ 12).

Debo is specifically alleged to have furthered the stock manipulation scheme by, among other things: (i) identifying suitable publicly traded shell companies that could be used in the scheme; (ii) identifying suitable privately held companies to use in "reverse mergers" with the public shell companies; (iii) obtaining financing to obtain control of all or substantially all of the outstanding shares of the shell companies; (iv) causing Nominee Entities to obtain ownership of the issuer's shares; (v) identifying and paying "promoters" to issue exaggerated and, at times, false press releases about the issuer in order to raise the trading price and volume of the issuer's shares; and (vi) identifying and paying various "trading specialists" who assisted in artificially manipulating the trading volume and price of the issuer's shares. (Indictment ¶ 15).   Such manipulating trading activity included in certain instances causing Nominee Entities that Debo and his co-conspirators controlled to engage in "match" trades in which they caused multiple Nominee Entities they controlled to essentially trade with one another to create the appearance of trading volume and demand for the stock at issue, as well as taking steps to ensure any given stock that they were manipulating closed "in the green" – meaning that the stock's closing price at the end of the trading day exceeded the opening price at the beginning of the trading day – by engaging in manipulative trading at or near the close of the trading day. (Indictment ¶ 19).

One of the companies whose publicly traded shares Debo and his co-conspirators schemed to manipulate is identified in the Indictment as "Company-5," a publicly traded company that was incorporated in Nevada, based in California, and purported to rent hybrid

electric and low emission vehicles.    As of October 2019, Company-5 purported to engage in plans to sell bottled CBD-infused water and energy drinks.    (Indictment ¶ 10).

      With respect to Company-5 the Indictment alleges that Debo schemed to manipulate the trading price and volume of this particular issuer.    (Indictment ¶ 26).    Debo identified that another privately held company (Company-3) would be merged into Company-5 as part of the stock manipulation scheme.    (Indictment ¶ 26).    Debo worked to obtain control of all of the free trading shares of Company-5 in preparation for the manipulation of Company-5's stock. (Indictment ¶ 27).    In order to facilitate a transaction with Company-3, Debo caused attorneys to prepare various necessary agreements, documents, and filings with respect to Company-5, including documents filed with the OTC Markets Group, Inc.    (Indictment ¶ 27).    Debo caused various documents relating to the listing of shares of Company-5 to be filed with OTC Markets Group, Inc. that were made accessible to the investing public on OTC Markets Group Inc.'s website, including certain financial statements and disclosure statements. (Indictment ¶ 28).

      As part of the scheme to manipulate Company-5's stock, Debo and his co-conspirator, Kenneth Ciapala, identified and agreed to provide payment to a stock promoter who was engaged to issue exaggerated and at times misleading press releases and also made plans to work with an individual who would act as a "trading specialist" in order to engage in manipulative trading activity to artificially increase the trading volume and share price of the relevant shares, including through match trades between Nominee Entities. (Indictment ¶ 29).

      The Complaint filed by the SEC in this action (Dkt. No. 1) (hereinafter the "SEC Complaint")[2]  relates to materially identical conduct with respect to the Company-5 stock

---

[2]  A copy of the SEC Complaint is annexed hereto as Exhibit B.

manipulation scheme.    In the SEC Complaint against Debo, Company-5 is named as Herbatech

Life Inc. (ticker symbol EVTP), which is described as a Nevada corporation with headquarters in

California and which previously purported to be in the business of "renting out environmentally

sensitive vehicles." (SEC Complaint ¶¶ 1, 13).    The SEC Complaint alleges that Debo

"orchestrated and almost finished implementing a fraudulent scheme to secretly control a

microcap shell company – Herbatech Life Inc. (ticker symbol EVTP) – and to promote its stock

to pump and dump its shares for profit." (SEC Complaint ¶ 1).    The SEC Complaint further

alleges that Debo installed a nominee chief executive officer and caused misleading disclosures

to be filed in order to enable the company's shares to trade actively and to fraudulently promote

the company to the investing public while Debo planned to secretly sell shares Debo controlled

at a significant profit.    (SEC Complaint ¶ 2).    The SEC Complaint further details how Debo

and his co-conspirators planned to purchase control of a microcap shell company, issue stock to

nominee individuals under their control and then "pump[] and dump[]" the stock – "in other

words, promoting (or 'pumping') the stock to unsuspecting investors to raise the stock price and

trading volume and then selling their own shares at a profit (the 'dumping')." (SEC Complaint ¶

19).    The SEC Complaint further details various false filings that Debo caused to be made in

order to effectuate the stock manipulation scheme. (SEC Complaint ¶¶ 36-66).

## **ARGUMENT**

The Government's requests to intervene and for a complete stay of this civil action

should be granted.    If this case were to proceed, there would be a risk of significant interference

with the Criminal Case.    A complete stay would prejudice no party to this civil action; would

prevent the circumvention of important statutory limitations on criminal discovery and avoid

asymmetrical discovery; and would preserve the Court's resources because many of the issues

presented by the civil action will be resolved in the Criminal Case.    Importantly, Debo consents

to the motion for a complete stay and the SEC takes no position with respect to the motion.

Thus, neither party to the litigation is objecting to the motion.

## I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of

right in an action when the applicant "claims an interest relating to the property or transaction

that is the subject of the action" and the applicant "is so situated that 'disposing of the action may

as a practical matter impair or impede the movant's ability to protect its interests. . . .'"

Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim

or defense that shares with the main action a common question of law or fact." The Government

respectfully submits that its application satisfies both of these provisions given the effect this

civil proceeding would have on the Criminal Case and the similarity of claims and facts between

the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions —

especially when the Government wishes to do so for the limited purpose of moving to stay

discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992;

*see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a

"discernible interest in intervening in order to prevent discovery in a civil case from being used

to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861

F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in

upholding the public interest in enforcement of the criminal laws cannot be protected adequately

by the existing parties in this civil litigation, none of whom represents the Government's

interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest."). Debo does not oppose the Government's motion to intervene and the SEC takes no position.

Moreover, if this action were to proceed in advance of the Criminal Case, it would impair and impede the Government's ability to protect its interests in the enforcement of federal criminal law.   This civil case and the Criminal Case arise from the same alleged pump-and-dump scheme perpetrated by the defendants and other co-conspirators, as is described above. Holding a civil trial before a criminal trial would create the possibility that there will be two trials covering the same fraudulent acts, as the facts surrounding the defendants' perpetration of the pump-and-dump scheme are central to both this civil action and the Criminal Case.   This raises the probability that witnesses will be unnecessarily burdened by having to testify twice.

In light of these circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.    A COMPLETE STAY OF THIS ACTION IS APPROPRIATE

### A.    Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012)

(quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a

stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with
> those presented in the civil case; (2) the status of the case, including
> whether the defendants have been indicted; (3) the private interests
> of the plaintiffs in proceeding expeditiously weighed against the
> prejudice to plaintiffs caused by the delay; (4) the private interests of
> and burden on the defendants; (5) the interest of the court; and (6) the
> public interest.

*See, e.g.*, *Tuzman*, No. 15 Civ. 7057 (AJN), at 2 (quoting *Louis Vuitton*, 676 F.3d at 99).

"Balancing these factors is a case-by-case determination, with the basic goal being to avoid

prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

But the factors "can do no more than act as a rough guide for the district court as it exercises its

discretion" and do not replace the Court's "studied judgment as to whether the civil action

should be stayed based on the particular facts before it and the extent to which such a stay would

work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d

at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into

the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

### B.    Discussion

Application of each of these factors here weighs in favor of the stay sought by the

Government.

#### 1.    *The Extent of the Overlap*

That the criminal and civil cases involve essentially identical facts and issues weighs

heavily in favor of a stay. "The most important factor at the threshold is the degree to which the

civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge

Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989));
*see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug.
27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353
(S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related
transactions the government is ordinarily entitled to a stay of all discovery in the civil case until
disposition of the criminal matter.").

Here, as described above, even a cursory examination of the Indictment and the SEC
Complaint makes clear that the alleged wrongdoing with respect to the securities pump-and-
dump scheme involving Company-3 and Company-5 (identified with ticker symbol EVTP in the
SEC Complaint) is essentially the same.   While the Indictment is broader in its scope and
alleges additional criminal conduct involving other stock manipulation schemes that Debo
perpetrated prior to the 2019 scheme regarding Company-3 and Company-5, both the Indictment
and the SEC Complaint overlap almost entirely with respect to the conduct relating to the
Company-3 and Company-5 stock manipulation scheme. As to that fraudulent scheme, the
Indictment and the SEC Complaint involve the same alleged fraudulent schemes perpetrated by
Debo, albeit the SEC Complaint sets out certain of the acts Debo engaged in in furtherance of the
scheme in more detail than the Indictment.   The cases involve virtually identical facts, witnesses
and issues, and name the same defendant. As a result, this factor weighs heavily in favor of a
stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman,* 15 Civ. 7057 (AJN), at 3.

### 2.      *The Status of the Criminal Case*

The return of an indictment in the Criminal Case is also a factor that weighs in favor of a
stay. "[T]he strongest argument for granting a stay is where a party is under criminal
indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he

weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Thus, this factor also militates strongly in favor of a stay.

### 3.    *The Potential Prejudice to the Parties*

No prejudice will result from the complete stay requested by the Government. The SEC has indicated that it takes no position as to the Government's motion.    The SEC will not be adversely impacted by a complete stay, as such a stay will allow the SEC to conserve its resources (as well as the resources of the Court) by avoiding needless duplicative litigation of many of issues presented by the civil action that may be resolved in the criminal case

With respect to the defendant, granting a stay of the civil case to permit the Criminal Case to proceed to its conclusion would actually benefit Debo, since granting a stay of the civil case would for now obviate forcing him to make the choice between being prejudiced in the civil case by the assertion of his Fifth Amendment rights or being prejudiced in the Criminal Case if he waived those rights.    A complete stay will also allow the defendant, like the SEC, to

10

conserve resources and avoid needless duplicative litigation of materially identical issues in two separate proceedings.

### 4.     *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, thereby streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application for a complete stay.

### 5.     *The Public Interest*

Finally, the Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery — restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp.

11

937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare

to rebut them is little more than open notice of an intention to tailor testimony to fit the

statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so

as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment

and intimidation, and to level the playing field between the government and the defendant, who

would be shielded from certain discovery by the Fifth Amendment").

     In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay

of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case
> may lead to perjury and manufactured evidence. Second, revelation
> of the identity of prospective witnesses may create the opportunity
> for intimidation. Third, criminal defendants may unfairly surprise
> the prosecution at trial with information developed through [civil]
> discovery, while the self-incrimination privilege would effectively
> block any attempts by the Government to discover relevant
> evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on

these concerns, judges in this District have frequently granted Government requests to limit

discovery in a parallel civil action in order to prevent the civil discovery rules from being

subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*,

*Tuzman*, No. 15 Civ. 7057 (AJN) (granting stay sought by Government); *SEC v. Beacon Hill

Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27,

2003) (in granting government's motion to stay, court noted: "The principal concern with respect

to prejudicing the government's criminal investigation is that its targets might abuse civil

discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v.

Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting

stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System* v. *Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he seeks to use affirmatively. *See, e.g.*, *SEC v. Chakrapani*, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which Debo would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from Debo because of his assertion of his Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of

13

the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because Debo will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's application.

## <u>CONCLUSION</u>

For these reasons, the Government respectfully requests that its application to intervene

and for a complete stay of this matter be granted. A proposed stay order is annexed hereto as

Exhibit C.

Dated:  New York, New York
            August 27, 2020

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        Acting United States Attorney

                            By:      /s/ Noah Solowiejczyk_____
                                        Noah Solowiejczyk
                                        Vladislav Vainberg
                                        Assistant United States Attorneys
                                        One Saint Andrew's Plaza
                                        New York, New York 10007
                                        Telephone: (212) 637-2473/1029

15